## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CRAIG SCOTT,

              **Plaintiff,**

v.

              **Case No. 3:18-CV-00629-NJR**

UNITED STATES and PROTESTANT
MEMORIAL MEDICAL CENTER,

              **Defendants.**

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Summary Judgment (Doc. 39) filed by Defendant United States, a Motion to Transfer (Doc. 33) filed by Defendant United States (the "Government"), and a Motion to Consolidate Cases (Doc. 43) filed by Plaintiff Craig Scott ("Scott"). For the reasons set forth below, the Court grants in part and denies in part the motions.

### FACTUAL BACKGROUND

In March 2015, Scott went to the emergency department at Protestant Memorial Medical Center ("Memorial") with a complaint of lower right extremity pain and underwent testing. Medical records were sent by the hospital to Scott's primary care provide, Erynn Elleby, M.D. (Doc. 39 at 2). Dr. Elleby was at that time affiliated with the Belleville Family Health Center ("Belleville Center"), a clinic operated by Southern Illinois Health Care Foundation ("SIHC") (*Id.*). Unfortunately, the fax was in fact sent to a number affiliated with a nurses' station at a clinic operated by the U.S. Air Force ("Air Force Clinic"). The Air Force Clinic shared office space with the Belleville Center, and the two clinics also were parties to

an affiliation agreement regarding a residency program (Doc. 31 at 3). Scott was unaware at the time that his medical records were not being transmitted to his primary care provider. Scott's underlying condition went undiagnosed, resulting in a partial amputation of his right leg in July 2015. On August 27, 2015, Scott filed suit against ten Missouri-based medical providers in the Circuit Court for St. Louis County, Case. No. 15SL-CC02922, for claims related to the partial amputation.

On March 30, 2017, Scott submitted an administrative claim to the Department of Health and Human Services ("HHS"), alleging that employees of the Belleville Family Health Center negligently failed to act when they failed to appropriately care for Scott's circulatory condition and advise him on condition management (Doc. 39-1 at 4). Scott further cited Dr. Elleby as having failed to timely take action on the abnormal results from the tests conducted on Scott at Memorial (*Id.*). More generally, Scott argued that the Belleville Center failed to communicate and coordinate Scott's care with his treatment providers (*Id.*). HHS acknowledged receipt of the claim by letter dated May 1, 2017, and denied the claim by letter dated July 9, 2018 (Doc. 39-2, 39-3).

On March 28, 2018, Scott filed this action under the Federal Tort Claims Act ("FTCA") against the United States in relation to his HHS administrative claim, alleging negligence by unspecified employees of SIHF's Belleville Center, a federally qualified health center (Doc. 1). After answering the complaint, in September 2018 the Government ascertained that Memorial had faxed Scott's records to a number associated with the Air Force Clinic, not the Belleville Center, and that staff at Belleville Center, including Dr. Elleby, had never received the records (Docs. 18, 18-2, 18-6).

Based on this new information, Scott filed an administrative claim with the U.S. Air

Force on March 18, 2019 (Doc. 39-4). Scott alleged that the U.S. Air Force failed to properly handle his medical records upon receipt at the Air Force Clinic. In a letter of March 18, 2019, the Air Force acknowledged receipt of the claim and requested additional information, further noting that while it aimed to complete its investigation in six months, it could take longer (Doc. 39-5). Scott responded in a letter of May 1, 2019, in which he alleged the Air Force Clinic received hundreds of medical records from Memorial that were intended for the Belleville Center.

Based on his complaint against the Air Force, Scott filed a new complaint against the United States in this court on September 20, 2019, alleging that the Air Force Clinic owed him a duty of care which it breached by failing to take timely action upon receipt of his medical records. *Scott v. United States*, Case No. 19-cv-1029-NJR-MAB (S.D. Ill.).

On October 10, 2019, Scott amended his Complaint in this case to reflect the new information regarding the fax number used by Memorial (Doc. 31). As amended, his complaint now alleges that because of its affiliation agreement with the Air Force Clinic, the Belleville Center was in a position to discover and act on the records faxed by Memorial to the Air Force Clinic (*Id.*).

ANALYSIS

I.      **Motion for Summary Judgment**

Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts

showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317,232-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence[.]" *Reid v. Neighborhood Assistance Corp. of America*, 749 F.3d 581, 586 (7th Cir. 2014) (*quoting Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005)).

A.  *Applicable Law*

Under the FTCA, a plaintiff may bring a tort claim against the United States only after exhausting administrative remedies. 28 U.S.C. §§ 2401(b), 2675. To exhaust, the plaintiff must "have first presented the claim to the appropriate Federal agency," 28 U.S.C. § 2675, so that the agency may investigate and address the claim before an action is filed. *Kanar v. United States*, 118 F.3d 527, 531 (7th Cir. 1997). To satisfy the FTCA's notice requirement, a plaintiff must satisfy all the elements of 28 C.F.R. § 14.2(a) in presenting a claim to an agency. *Chronis v. United States*, 932 F.3d 544, 547 (7th Cir. 2019) (citing *Kanar*, 118 F.2d at 528). According to *Kanar*, a "claim" under that regulation has four elements: (i) notification of the incident; (ii) a demand for a sum certain; (iii) the title or capacity of the person signing; and (iv) evidence of this person's authority to represent the claimant. *Id.*; *see also Smoke Shop, LLC v. United States*,

761 F.3d 779, 787 (7th Cir. 2014) (noting that other circuits merely require a "statement sufficiently describing the injury to enable the agency to begin its own investigation").

    *B. Discussion*

    Here, the Government argues that Scott has not exhausted his administrative remedies because in his initial HHS complaint, he did not indicate that he would be claiming liability based on the affiliation agreement between SIHF and the Air Force Clinic. Thus, HHS only looked to whether SIHF actually received records from Memorial and did not conduct an investigation relevant to his current claim. Scott notes that the new arguments in his amended complaint are based on information obtained during discovery—not only would it be unreasonable to require him to re-file his claim each time discovery altered his allegations, the law does not require this, Scott argues.

    Indeed, Scott is correct that case law in this circuit does not require notice of a federal tort claim to have the extreme specificity which the Government seeks here. As the Seventh Circuit noted in *Kanar*, under the FTCA a potential plaintiff must give a federal agency notification of the incident, yet this need not include the exact causes of action and theories of liability upon which a later claim may be founded. This closely follows case law in other circuits, which generally require a description of the injury, but not necessarily the exact legal claims alleged. The purpose of this notification is merely to allow the agency time to conduct its own investigation into the incident in question and determine if there may be any bases for liability. Here, Scott did provide notice of an incident which he felt gave rise to federal tort liability. Based on that notice, HHS chose to conduct an extremely narrow investigation focused around one very specific question, not looking at the circumstances of the incident as a whole. As a result, its investigation failed to address subjects which may now be relevant

to the action as it has evolved. The narrowness of HHS's investigation cannot be blamed upon Scott—HHS had all the notice it needed to conduct a full investigation into the incident as a whole and potential liability connected with it. Accordingly, Scott's initial notice was sufficient to exhaust his administrative remedies.

## II.    Motion to Transfer

### A.  Applicable Law

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." When considering a motion to transfer, a court should look to convenience and fairness to the parties. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). A plaintiff's choice of forum is given deference, though certain courts have asserted that this deference diminishes when the plaintiff is not a resident of that forum. *E.g., Forcillo v. LeMond Fitness, Inc.*, 220 F.R.D. 550, 552 (S.D. Ill. 2004). In assessing the convenience of the parties and witnesses, a court should look to "private interest" factors, which include (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience to the witnesses. *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). A court should also consider "public interest" factors related to the interests of justice, such as "the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their local." *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

B. *Discussion*

Here, the Government seeks to transfer this case and its companion, *Scott v. United States*, 19-cv-1029 (S.D. Ill.), to the Eastern District of Missouri, arguing that the ten Missouri defendants in the St. Louis County lawsuit may be necessary parties to the cases in this district, and those parties' absence could result in inconsistent judgments. The Government argues that those parties would be easier to join in the Eastern District of Missouri, while Memorial's position as a health care provider to residents of both Illinois and Missouri means that it would likely still be easy to join in Missouri. Scott opposes transfer, noting that the Eastern District of Missouri has no relation to the St. Louis County case or the Memorial case and would be a wholly new forum. The benefit that the Government claims, Scott argues, is contingent on the Eastern District of Missouri agreeing to exercise supplemental jurisdiction.

Ultimately, the Court views the Government's arguments in favor of transfer as being rather speculative—it is not clear that the Government would have difficulty joining the Missouri defendants in this district, for the same reasons that it might not be difficult to join Memorial in Missouri. Further, it is not clear that the Eastern District of Missouri would in fact be willing to exercise supplemental jurisdiction over those claims. What is clear is that there are currently no actions in the Eastern District of Missouri connected with the incidents underlying this case. Thus, transferring would require a new judge to become familiar with the underlying facts and the complicated set of actions in state and federal court that have arisen out of those facts. This Court, which has already had substantial time to become familiar with the facts, feels that transfer would delay the resolution of these controversies. Accordingly, transfer is denied.

### III.     Motion to Consolidate

#### A.   *Applicable Law*

Federal Rule of Civil Procedure 42 permits to consolidate actions involving "a common question of law or fact[.]" The Supreme Court has recognized that district courts have "substantial discretion" in deciding when to consolidate cases. *Hall v. Hall*, 138 S. Ct. 1118, 1131 (2018). "The purpose behind a Rule 42(a) consolidation is to promote judicial efficiency, but not if prejudice caused to any of the parties outweighs it." *McKnight v. Illinois Cent. R. Co.*, 2009 U.S. Dist. LEXIS 49539 at *3 (S.D. Ill. June 12, 2009) (citing *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970).

#### B.   *Discussion*

Scott seeks to consolidate this action with *Scott v. United States*, 19-cv-1029 (S.D. Ill.), noting that the two cases in this court arise out of a single injury and involve many common questions of fact. Discovery will need to be duplicated in separate actions, and if the actions are tried separately then the same witnesses will need to be produced twice. The Government opposes consolidation, noting that the two cases involve different federal entities and that different affirmative defenses apply in each cases, which would create confusion upon consolidation.

While noting that having the Government representing two different entities with different affirmative defenses may indeed produce some confusion, the Court is confident that it is capable of understanding and distinguishing any arguments advanced by the Government. Furthermore, any confusion resulting from consolidation will be less than the potential confusion arising from having two separate proceedings, even with coordinated

discovery schedules. Finding that there is no indication that the Government will be prejudiced by consolidation, the Court grants the motion to consolidate.

### CONCLUSION

For the reasons set forth above, the Court **DENIES** the Unites States' Motion for Summary Judgment, **DENIES** the United States' Motion to Transfer, and **GRANTS** Scott's Motion to Consolidate.

**IT IS SO ORDERED.**

**DATED:   May 21, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**