IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRAIG SCOTT,<br><br>   **Plaintiff,**<br><br>v.<br><br>**UNITED STATES OF AMERICA and PROTESTANT MEMORIAL MEDICAL CENTER, INC. D/B/A MEMORIAL HOSPITAL,**<br><br>   **Defendants.** | |
| **UNITED STATES OF AMERICA,**<br><br>   **Third-Party Plaintiff,**<br><br>v.<br><br>**OLGA RUDOMIOTOV, M.D.; HANS H. MOOSA, M.D.; and PROTESTANT MEMORIAL MEDICAL CENTER, INC., D/B/A MEMORIAL HOSPITAL,**<br><br>   **Third-Party Defendants.** | Case No. 3:18-CV-00629-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the court are motions to dismiss the Government's third-party complaint for contribution on behalf of the U.S. Air Force ("USAF," and such complaint hereinafter "USAF Action") by Defendant Protestant Memorial Medical Center ("Memorial") (Doc. 85), Third-Party Defendant Hans Moosa ("Moosa") (Doc. 87), and Third-Party Defendant Olga Rudomiotov ("Rudomiotov") (Doc. 90). Further pending are motions to dismiss the Government's third-party complaint for contribution on behalf of

the U.S. Department of Health and Human Services ("HHS," and such complaint hereinafter "HHS Action") by Rudomiotov (Doc. 111), Memorial (Doc. 116), and Moosa (Doc. 120). The Government has further moved to strike certain reply briefs relating to the motions to dismiss the USAF Action (Doc. 110). For the reasons set forth below, the Court denies all of the pending motions.

## FACTUAL & PROCEDURAL BACKGROUND

This case involves a number of actions and cross-claims, which together stem from allegedly negligent treatment received by Plaintiff Craig Scott from several medical providers during and following his visit to the emergency room at Memorial in March 2015. Scott went to the emergency department at Protestant Memorial Medical Center ("Memorial") with a complaint of lower right extremity pain and underwent testing (Doc. 10 at 1). Medical records were sent by the hospital to Scott's primary care provider, Erynn Elleby, M.D. (*Id.* at 2). Elleby was at that time affiliated with the Belleville Family Health Center ("Belleville Center"), a clinic operated by Southern Illinois Health Care Foundation ("SIHC"), which is a federally qualified health center (Doc. 38 at 2). Unfortunately, the fax was in fact sent to a number affiliated with a nurses' station at a clinic operated by USAF ("USAF Clinic") (Doc. 10 at 2). Scott's underlying condition went undiagnosed, resulting in a partial amputation of his right leg in July 2015 (*Id.* at 3).

Based on this injury, Scott filed actions against several medical providers in state court in Missouri. In August 2015, Scott filed a medical negligence action in the Circuit Court of St. Louis County against medical providers including Rudomiotov. *Scott v. Rudomiotov et al.*, Case No. 15-SL-CC02922 (Mo. Cir. Ct.). In April 2017, Scott filed another

action for medical negligence against Memorial in the Circuit Court of St. Clair County, Illinois. *Scott v. Protestant Memorial Medical Center, Inc.*, 2017-L-181 (Ill. 20th Cir. Ct.). Scott's Illinois action discussed certain testing and reports conducted at Memorial which Moosa, an employee of Memorial, "electronically signed" (Doc. 21-5 at 9-10).

On March 30, 2017, Scott submitted an administrative claim to the Department of Health and Human Services ("HHS"), alleging that employees of the Belleville Center negligently failed to act when they failed to appropriately care for Scott's circulatory condition and advise him on condition management (Doc. 39-1 at 4). After HHS denied the claim, he filed the instant action under the Federal Tort Claims Act ("FTCA") against the United States in relation to his HHS claim (Doc. 1).

In 2018, after discovery in the First FTCA Action revealed that Memorial had faxed Scott's records to a number associated with the Air Force Clinic, not the Belleville Center, Scott filed a second administrative claim with the Air Force, and upon denial of the claim filed a second action in this Court. *Scott v. United States*, 19-cv-367-SMY-MAB (S.D. Ill.). Scott subsequently voluntarily dismissed that action as refiled as *Scott v. United States*, 19-cv-1029-NJR (S.D. Ill.), which action was consolidated with the instant action on May 21, 2020 (Doc. 60) (the "Consolidated Action").

After consolidation, the United States introduced the USAF and HHS Actions for contribution against Memorial and third-party defendants Moosa and Rudomiotov. Memorial, Moosa, and Rudomiotov have all filed motions to dismiss both third-party complaints.

Memorial and Moosa move to dismiss the USAF Action and the HHS Action

pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that both actions (1) are untimely and barred by the relevant Illinois statute of limitations and repose; (2) are not supported by a certificate of merit as required under Illinois Law; and (3) both complaints fail to state a claim on which relief can be granted. Rudomiotov seeks to dismiss the USAF Action and HHS Actions under Rule 12(b)(2) and Rule 12(b)(6) arguing first that dismissal of both actions is warranted due to a lack of personal jurisdiction over Rudomiotov, and secondly that both actions are untimely due to the relevant statutes of limitations and repose.

## LEGAL STANDARDS

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

On the other hand, when facing a Rule 12(b)(2) motion, the plaintiff bears the burden of proving that personal jurisdiction exists. *Lack v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 860 (N.D. Ill. 2016) (citing *Advanced Tactical Ordnance Sys., LLC v. Real Action*

*Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014)). Where the district court rules without holding an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).

## ANALYSIS

I.  **Motion to Strike**

Before turning to the matters at issue in the various motions to dismiss, the Court must first address the Government's Motion to Strike. The Government argues that the Third-Party Defendants raised certain arguments related to their motions to dismiss the USAF Action for the first time in their reply briefs. Arguments not raised in an initial filing are waived and cannot be raised for the first time in a reply, and for this reason the Government seeks to strike the filings in question pursuant to Federal Rule of Civil Procedure 12(f). *See James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998). Rule 12(f) provides that a Court "may strike from a pleading any redundant, immaterial, impertinent or scandalous matter."

Generally, district courts have broad discretion in exercising their power to strike, and motions to strike are usually frowned upon due to their potential to create delay. *Delta Consulting Grp. v. R. Randle Const.*, 554 F.3d 1133, 1141-42 (7th Cir. 2009); *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Here, the filings in question relate to motions to dismiss, which are pleadings that may be freely amended upon a finding by the Court that such amendment is in the interests of justice. Fed. R. Civ. P. 15(a)(2). Accordingly, as the alleged flaws in the initial filings could be remedied

by a mere amendment, the Court concludes that striking would merely delay the expedient resolution of these actions. The Motion to Strike is denied.

## II. Personal Jurisdiction over Rudomiotov

Federal Rule of Civil Procedure 4(k)(1)(B) provides that "[s]erving a summons establishes personal jurisdiction over a defendant who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued." This provision appeared in a 1963 amendment to former Rule 4(f) as a response to the increasing incidence of multiparty legislation in federal courts and a desire to ensure that a single district would be able to grant complete relief in multiparty actions. *See Coleman v. American Export Isbrandtsen Lines, Inc.*, 405 F.2d 250, 251 (2d Cir. 1968) (Friendly, J.); *see also* Charles Alan Wright et al., 4 Fed. Prac. & Proc. § 1127. Rudomiotov seeks to argue that the key question in determining whether a defendant can be subjected to jurisdiction through exercise of Rule 4(k)(1)(B) is not whether they have any contact with the "bulge" area, but rather whether a defendant located within the bulge has contacts with the actual forum state. Rudomiotov cites in support *Coleman*, yet that case in fact stands for the opposite proposition, having held that process can be served within the "bulge" on persons subject to personal jurisdiction within the bulge territory but not the forum state. *Coleman*, 405 F.2d at 251. This rule is standard, and Rudomiotov has not identified any cases that diverge from it. *See* 16 Moore's Federal Practice - Civil § 108.123 (3d ed. 2020).

Rudomiotov does not appear to argue that she is not subject to personal jurisdiction within the 100-mile bulge area. In the view of this Court, the law regarding

4(k)(1)(B) is well settled and requires merely jurisdiction within the bulge area and not a showing of minimum contacts with the forum state itself. Accordingly, the Court finds that it has jurisdiction over Rudomiotov through Rule 4(k)(1)(B) and denies her Rule 12(b)(2) challenges to the USAF and HHS Actions.

## III. Statute of Limitations and Repose

The Illinois statute of limitations and repose for medical malpractice actions, 735 Ill. Comp. Stat. 5/13-212(a), sets a general statute of limitations of two years for malpractice actions from the date of a claimant's notice of the injury, with a statute of repose of four years from the date of the injury. The Illinois Supreme Court has clarified that these limitations apply to actions for contribution. *Hayes v. Mercy Hosp. & Medical Ctr.*, 136 Ill. 2d 450, 460 (N.D. Ill. 1990).

It is a well-settled principle, however, that state law may not bar the United States from enforcing its claims through the application of a statute of limitations or the doctrine of laches. *United States v. Summerlin*, 310 U.S. 414 (1940). This principle arises from the federal government's position as sovereign and the traditional common law canon of *nullum tempus occurrit regi*—just as the United States may not be haled into state court, so limitations may not be placed by a state *in proprio vigore* on the federal sovereign's right to bring action. *See United States v. Thompson*, 98 U.S. 486, 488 (1878); *United States v. Hoar*, 26 F. Cas. 329 (F. Cir. Ct. Mass. 1821) (Story, J.). While this principle was first recognized in some of the earliest examples of federal jurisprudence, it is equally valid today, and the Seventh Circuit and this district have followed it in more recent decisions. *See United States v. Tri-No Enterprises, Inc.*, 819 F.2d 154, 158 (7th Cir. 1987); *United States v. St. Louis*

*University*, 2007 U.S. Dist. LEXIS 84915 (S.D. Ill.) (finding Illinois statute of limitations and repose did not bar action for contribution in medical malpractice judgment).

Moosa notes the existence of this doctrine, but argues that certain courts have indicated that exceptions exist to the general rule, as in *United States v. California*, 5017 U.S. 746 (1993). In that case, a statute of limitations had run before the United States assumed the claim as a subrogee, and the Court held that Government could not bring the claim back to life. Moosa likens this case to *California*, arguing that because Scott is barred from bringing any direct claim against Moosa, the United States should not be able to resurrect potential liability against Moosa through an action for contribution.

An action for contribution is not the same as one brought by a subrogee, however, and rules for accrual differ. The court in *California* explicitly stated that it was not generally addressing the question of whether a state-law action brought by the United States is subject to a federal or state statute of limitations, and it has not subsequently revisited that question. 507 U.S. at 756. As the specific holding in *California* does not appear to apply to the instant action, the Court is inclined not to diverge from the established rule holding the United States exempt from state statutes of limitations and repose.

The Third-Party Defendants in their replies further raise *Bresson v. Commissioner of Internal Revenue*, 213 F.3d 1173 (9th Cir. 2000), and its discussion of the differentiation of *Summerlin* and the earlier decision in *Guarantee Trust Co. of New York v. U.S.*, 304 U.S. 126 (1938). In *Bresson*, however, the Court surmised that the principle of *nullum tempus* applied only "(1) when the right at issue was obtained by the government through, or

created by, a federal statute, and (2) when the government was proceeding in its sovereign capacity[,]" as opposed to situations where the Government brought a claim on behalf of another party, such as a subrogator or transferor of a claim. 213 F.3d at 1176. In *Bresson*, the Ninth Circuit ultimately found that the state statute of limitations did not bar the federal claim at issue in that case. By the logic applied in *Bresson*, the statute of limitations would similarly not apply in this case, for this action is brought by the United States in its sovereign capacity and does not represent a claim assigned to the United States by some third party. The Third-Party Defendants wish to liken the position of the United States in a contribution action to that of a subrogee in *California*, but the Court is not persuaded by this comparison. The Third-Party Defendants further rely on the Eleventh Circuit's opinion in *Saccullo v. United States*, 913 F.3d 1010 (11th Cir. 2019), but that case dealt with the application of Florida law to a deed held by a Florida citizen years before the Government attempted to apply a tax lien to the deed. Here, the Government did not inherit its claim for contribution from another party, and the comparison to *Saccullo* is thus inapposite.

Accordingly, the Illinois statute of limitations and repose should not be applied to the claim for contribution in the actions at issue here. Rather, the applicable rule is 28 U.S.C. § 2415, which prescribes a three-year limitations period for tort actions. In an action for contribution, this period commences upon service of a lawsuit by a plaintiff upon the United States. *St. Louis University*, 2007 U.S. Dist. LEXIS 84915 at *17. In this case, the United States was first served on April 4, 2018, and its subsequent actions for contribution were therefore timely.

The Court denies dismissal of the USAF Action and the HHS Action based on statute of limitations and repose.

## IV. Certificate of Merit

Illinois law provides that in "any action…whether in tort, contract, or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical…malpractice," the plaintiff shall file an affidavit from a medical professional who has reviewed that case and determined that there is reasonable and meritorious cause for such as action. Ill. Comp. Stat. § 5/2-622(a). This affidavit must be accompanied by a written report, identifying the plaintiff and the reasons for the reviewer's determination. *Id.* Section 2-622 has been found to be substantive law, applicable in federal court, and failure to comply may constitute grounds for dismissal. *Estate of Cassara by Cassara v. Illinois*, 853 F. Supp. 273, 281 (N.D. Ill. 1994).

Unfortunately, however, Section 2-622 makes no mention of third-party actions for contribution. The purpose of the provision is to screen out frivolous suits and seems inapplicable in actions for contribution, where the plaintiff in the underlying action has already demonstrated the merit of the original complaint. *See DeLuna v. St. Elizabeth's Hosp.*, 588 N.E.2d 1139, 1142 (Ill. 1992). Indeed, there is no Illinois law indicating that the provision is applicable in actions for contribution, and the third-party defendants rely on decisions from other states that deal with entirely different provisions. The Court is not inclined to extend reasoning of other state courts to interpret Illinois statutes contrary to standard practice.

Accordingly, the Court rejects the defendants' arguments regarding the absence of Section 2-622 certifications in the USAF Action and the HHS Action.

## V. Failure to State a Claim

For a complaint to properly allege a right of contribution pursuant to the Illinois Joint Tortfeasor Contribution Act, it must assert that "(1) the defendant and the third-party must both be subject to liability in tort to the plaintiff, and (2) their liability must arise out of the same injury." *Alper v. Altheimer & Gray*, 257 F.3d 680, 684 (7th Cir. 2001). Under Illinois law, to establish "liability in tort to the plaintiff," a Third-Party Plaintiff must plead elements sufficient to establish a claim of medical malpractice: standard of care, breach of the standard of care, and a resulting injury proximately caused by the failure to follow the standard of care. *See Jinkins v. Evangelical Hospitals Corp.*, 336 Ill. App. 3d 377 (Ill. App. Ct. 2002). To survive a Rule 12(b)(6) motion to dismiss, however, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.*

In the USAF and HHS Actions, the Government bases its third-party complaints on the plaintiff's existing actions against Memorial in this Court and against Rudomiotov in St. Louis. Those actions alleged negligence on the part of Memorial and its agents (such as Moosa, although he is not named in the underlying action) and against Rudomiotov, arising out of the same series of events in which the plaintiff has accused the United States of negligence in the consolidated actions in this Court. Those complaints appear to have been deemed satisfactory in their respective

fora, sufficiently laying out the elements of a potential negligence claim. Accordingly, those underlying complaints largely serve to establish the elements of the underlying medical malpractice claim, and the Government's burden in its third-party complaint here is merely to put the third-party defendants on notice that they may be subject to liability in tort to the same plaintiff for the same injury and thus subject to contribution liability.

The Government's third-party complaints are minimally worded and the facts contained therein may not, ultimately, serve to establish a valid claim for contribution, but they are sufficient to satisfy the Rule 8 pleading standard and withstand a motion for dismissal on the basis of a failure to state a claim.

## CONCLUSION

For the reasons set forth above, the Court denies all pending motions.

**IT IS SO ORDERED.**

**DATED:** October 19, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**